UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSE DIAZ CERDA,

                        Plaintiff,

v.                                                          Case No. 19-1111-JWB

CILLESSEN & SONS, INC.,

                        Defendant.

## ORDER

In this employment case, Jose Diaz Cerda asserts claims against his former employer, Cillessen & Sons, Inc., under the Family and Medical Leave Act of 1993 and the Fair Labor Standards Act of 1938. Defendant has filed two motions related to depositions recently taken in the case. First, defendant moves the undersigned U.S. Magistrate Judge, James P. O'Hara, to sanction plaintiff and his counsel based upon their conduct at plaintiff's deposition and at the deposition of plaintiff's ex-wife, Nanda DeRoulet (ECF No. 55). Second, defendant moves to strike the errata sheet to plaintiff's deposition (ECF No. 56). For the reasons discussed below, the motion for sanctions is granted and the motion to strike is granted in part and denied in part.

## MOTION FOR SANCTIONS

The parties conducted the depositions of plaintiff and DeRoulet on April 21, 2020. Defendant asserts that during both depositions, plaintiff's counsel improperly made excessive speaking objections, coached the witness, instructed the witness not to answer,

1

asked irrelevant questions, and was uncooperative and discourteous.  Defendant further complains that during DeRoulet's deposition, defense counsel demanded a suspension of the deposition, but plaintiff's counsel refused to stop his cross-examination.

In moving for sanctions, defendant argues plaintiff and his counsel violated both Fed. R. Civ. P. 30(c)(2) and the District of Kansas Deposition Guidelines ("Deposition Guidelines"), and it seeks sanctions under Fed. R. Civ. P. 37(b)(2).  Because the court finds plaintiff and his counsel did greatly overstep both the formal rules and the rules of civility the court expects parties to follow, the motion is granted.  However, the numerous sanctions requested by defendant are excessive, and the relief awarded is limited.

Rule 30(c) governs pretrial testimony taken by deposition.  It requires that "[t]he examination and cross-examination of a deponent proceed as they would at trial," with very limited exceptions.[1]  Although a judge generally is not present at depositions, the rule clearly contemplates depositions will be conducted in a professional manner, with counsel and parties behaving as they would in open court.  Subsection (2) sets forth the manner in which objections must be presented and preserved.  "An objection must be stated concisely in a nonargumentative manner."[2]  So-called "speaking objections" are not allowed.[3]  The

---

[1] Fed. R. Civ. P. 30(c)(1).

[2] Fed. R. Civ. P. 30(c)(2).

[3] *Cincinnati Ins. Co. v. Serrano*, No. 11-2075-JAR, 2012 WL 28071, at *4 (D. Kan. Jan. 5, 2012) ("The Guidelines support Rules 30 and 32 by highlighting some important concepts. One is to prohibit objections which suggest answers to or otherwise coach the witness, commonly called "speaking objections.").

2

deponent must proceed in his testimony, despite any objection, except in three narrow circumstances: "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."[4]   Rule 30(d)(3) permits a deponent or party to suspend a deposition in order to present to the court a motion alleging the deposition is being conducted in bad faith or in an unreasonable manner.

The Deposition Guidelines augment these rules "and provide ground rules for an integral piece of the modern federal court lawsuit."[5]  Of note, they "explicitly mandate that counsel cooperate with one another [and] treat deponents and opposing counsel courteously."[6]  In line with Rule 30(c)(2), they forbid long-winded objections that "suggest answers to or otherwise coach the deponent."[7]   And they prohibit "[a]rgumentative interruptions."[8]   Finally, the Deposition Guidelines recognize that "[p]rivate conferences between deponents and their attorneys during the actual taking of the deposition are

---

[4] Fed. R. Civ. P. 30(c)(2).

[5] *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-md-2785-DDC, 2018 WL 6617105, at *1 (D. Kan. Dec. 14, 2018).

[6] *Id.* (citing Deposition Guidelines § 1).

[7] Deposition Guidelines § 5(a).

[8] *Id.*

improper except for the purpose of determining whether a privilege or work product immunity should be asserted."[9]  "These Guidelines aren't aspirational," but mandatory.[10]

Where discovery rules are violated, Rule 37(b)(2) provides a vehicle for the imposition of sanctions.  The sanctions permitted run the gamut, from dismissal to the reimbursement of expenses and fees.[11]  Rule 30(d)(2) also permits a court to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."  The court has discretion in determining the appropriate sanction.[12]

The court has read the entire transcripts of the depositions of plaintiff and DeRoulet, and is greatly disappointed.  Although defense counsel's objections were not always appropriate or pristine, the objections of plaintiff's counsel—in clear violation of both Rule 30 and the Deposition Guidelines—repeatedly disrupted defendant's ability to gather information.  Plaintiff's counsel consistently made speaking objections, coached the witness, asserted argumentative interruptions, and twice refused requests to take a break/suspend the depositions.  Such behavior never would have been allowed in open court and won't be tolerated simply because the witnesses were testifying outside the courthouse.

---

[9] *Id.* at § 5(c).

[10] *In re EpiPen*, 2018 WL 6617105, at *1.

[11] Fed. R. Civ. P. 37(b)(2).

[12] *Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 267 (10th Cir. 1995).

Here are just a few examples of the conduct that permeated and tainted the depositions:

Example 1: Failure to Cooperate and be Courteous

DEFENSE COUNSEL: How much longer we going to be?

PLAINTIFF'S COUNSEL: Counsel, I haven't even been asking questions for 15, 20 minutes.

DEFENSE COUNSEL: I asked how much longer we're going to be.  And I would like to take a break.

PLAINTIFF'S COUNSEL: No, we can finish with my questions and --

DEFENSE COUNSEL: I would like to take a break.

PLAINTIFF'S COUNSEL: We're not taking a break, counsel.

DEFENSE COUNSEL: Yeah, we are.

PLAINTIFF'S COUNSEL: No, we're not.

MS. PAULA CILLESSEN: I would like a restroom break myself.

PLAINTIFF'S COUNSEL: Ma'am, you're not a witness and you can take a break whenever you like.

DEFENSE COUNSEL: No, we're taking a break.

PLAINTIFF'S COUNSEL: No, we're not.

DEFENSE COUNSEL: Then I'm recessing the deposition.

PLAINTIFF'S COUNSEL: Let me ask -- Mr. Diaz, we are here to take your deposition.  Do you want to take a break?

DEFENSE COUNSEL: It's 1:00.  We have a witness that --

PLAINTIFF'S COUNSEL: I am asking the question.

DEFENSE COUNSEL: Excuse me.

PLAINTIFF'S COUNSEL: Hey, excuse me.  Let me ask the witness answer [sic].

DEFENSE COUNSEL: Don't raise your voice.

PLAINTIFF'S COUNSEL: Don't you raise your voice at me.  Don't start picking stuff up to throw at me.

DEFENSE COUNSEL: We're going to stop.  It is 1:00 and we have been going since 11:30.  We have a witness waiting outside scheduled for 1.  The appropriate thing to do at this time is to take a break so people can use the restroom if they'd like and to also advise the witness who is waiting how much longer she might have to wait.  And if you're not going to agree to do that right now, I'm recessing this deposition, as allowed by the rules, so that we can take the matter up with the Court.  So you've got two choices.

PLAINTIFF'S COUNSEL: No, you don't tell me what choices I have.  We have a witness --

DEFENSE COUNSEL: You have two choices.

PLAINTIFF'S COUNSEL: Let's ask the witness before you -- Mr. Diaz, do you

want to take a break?

THE WITNESS: I don't want to, but it's up to everyone.[13]

The court is astonished that a simple request to take a restroom break, after an hour-and-a-half of questioning, was adamantly refused by plaintiff's counsel, and for no stated reason at that.  As the court recognized in *Ash Grove Cement Co. v. Wausau Ins. Co.*, "[i]mplicit in [Rule 30] and explicit in the guidelines is the expectation that counsel will cooperate and be courteous to each other and to deponents."[14]  This exchange was far from courteous.  Even the witness recognized that he did not unilaterally control when the deposition should break, noting, "it's up to everyone."  But plaintiff's counsel, rather than simply answering defense counsel's initial question of how much longer he estimated his cross-examination to continue, immediately dug in his heels and refused to take a break or recess the deposition pursuant to Rule 30(d)(3).

Later that day, plaintiff's counsel also refused to terminate DeRoulet's deposition after defense counsel made a similar demand:

Example 2: Failure to Cooperate and be Courteous

DEFENSE COUNSEL: Do you understand?  I am recessing the deposition as

allowed --

---

[13] ECF No. 55-1 at 117:20-120:7.

[14] No. 05-2339-JWL, 2007 WL 689576, at *3 (D. Kan. Mar. 1, 2007).

7

THE WITNESS: Cillessen & Sons.

PLAINTIFF'S COUNSEL: Now, on here --

DEFENSE COUNSEL: I am recessing the deposition as allowed by the rules.

PLAINTIFF'S COUNSEL: -- how many employees does Cillessen & Sons state it has with its company on its LinkedIn profile?

THE WITNESS: 51 to 200.

DEFENSE COUNSEL: I object.

PLAINTIFF'S COUNSEL: Now, let me ask you this: Have you ever dealt with an employer's website?

THE WITNESS: Of course.

PLAINTIFF'S COUNSEL: Is the information on an employer's website generally accurate and --

DEFENSE COUNSEL: I want a separate bill going to him for this whole line of questioning.

PLAINTIFF'S COUNSEL: I'm sorry, counsel, you started this deposition and --

DEFENSE COUNSEL: I want to suspend it pursuant to the rules and you are ignoring me.

PLAINTIFF'S COUNSEL: All right, let me ask you this --

DEFENSE COUNSEL: Are you denying my ability to invoke the rule --

PLAINTIFF'S COUNSEL: You can raise your objection. You can raise the objection and --

DEFENSE COUNSEL: No, I have a right to suspend the deposition.

PLAINTIFF'S COUNSEL: I'm in the middle of cross-examination --

DEFENSE COUNSEL: No.

PLAINTIFF'S COUNSEL: -- so I'm entitled to cross-examine the witness.

DEFENSE COUNSEL: And I have the right to suspend the deposition.

[plaintiff's counsel continues asking questions of DeRoulet].[15]

As the above exchange reflects, plaintiff's counsel ignored defense counsel's demand to suspend the deposition so that he could move the court to terminate or limit the deposition. Defense counsel had a right under Rule 30(d)(3) to make the demand. In his response to the motion, plaintiff defends his counsel's conduct by noting defense counsel never specifically said the deposition was being suspended under Rule 30(d)(3). The court rejects this defense. First, plaintiff's counsel himself—only hours earlier—invoked the Rule 30(d)(3) right during plaintiff's deposition. As soon as plaintiff's counsel asked to contact the court, defense counsel appropriately said, "sure."[16] Plaintiff's counsel should have returned this courtesy. Second, if plaintiff's counsel did not understand the authority

---

[15] ECF No. 55-2 at 53:19-55:8.

[16] ECF No. 55-1 at 79:25.

behind defense counsel's request, he simply should have inquired in a "deliberate, rational discussion," rather than rudely ignoring the request.[17]

"While counsel's disregard for the courtesy plank in Section 1 of the Deposition Guidelines is bad enough, the court finds other aspects of [the] transcript more troubling yet.  Many times, . . . counsel ignored the Guidelines's provision forbidding verbose objections designed to coach the witness."[18]  Here's an example:

Example 3: Witness Coaching

DEFENSE COUNSEL: Why didn't you tell them that you were either a traffic control superintendent or a crew leader?

THE WITNESS: Don't know.  I wasn't.

DEFENSE COUNSEL: You weren't what?

PLAINTIFF'S COUNSEL: He just answered your question. He was not a traffic control superintendent, he was not leader.

THE WITNESS: That's the answer, that's my answer.[19]

Thus, when defense counsel attempted to clarify a confusing response from the witness, plaintiff's counsel inappropriately jumped in with a speaking objection.  In *In re EpiPen*, U.S. District Judge Daniel D. Crabtree examined a similar coaching objection,

---

[17] *Green v. Harbor Freight Tools USA, Inc*., No. 09-2380-JAR, 2010 WL 11435113, at *2  (D. Kan. June 18, 2010).

[18] *In re EpiPen*, 2018 WL 6617105, at *3.

[19] ECF No. 55-1 at 90:1-9.

noting "[t]he witness's answer began where her counsel's suggestive objection had ended."[20]  He ruled, "The court wouldn't tolerate a speaking objection like this one during a trial.  And the Federal Rules of Civil Procedure make it equally impermissible during a deposition."[21]  The undersigned magistrate judge agrees with Judge Crabtree's reasoning. It was clearly improper for plaintiff's counsel to coach plaintiff with a speaking objection, and the outcome is particularly harmful here where plaintiff simply adopted counsel's answer as his own, rather than answer the question in his own words.

At least six separate times during plaintiff's deposition, coaching by plaintiff's counsel led plaintiff to refuse to answer a series of questions.  Here's one example:

Example 4: Refusal to Answer after Witness Coaching

> DEFENSE COUNSEL: Question No. 18 says: "Have you ever been convicted of a crime."  Do you understand that?
>
> THE WITNESS: Yes.
>
> DEFENSE COUNSEL: Your answer is no, correct?
>
> THE WITNESS: Who did I answer that to?
>
> DEFENSE COUNSEL: Written down here is the word no, true?
>
> THE WITNESS: It is written there, but I don't know who I answered that to.
>
> DEFENSE COUNSEL: The answer isn't true, correct?

---

[20] 2018 WL 6617105, at *3.

[21] *Id.*

PLAINTIFF'S COUNSEL: Objection, counsel.  There is no information that it's not true.  Actually, his testimony has been that he has never been convicted of any crime.

DEFENSE COUNSEL: The answer isn't true, is it, sir?

PLAINTIFF'S COUNSEL: Objection.

THE WITNESS: I'm not going to answer.

DEFENSE COUNSEL: Why aren't you going to answer?

PLAINTIFF'S COUNSEL: Because it's already answered.

DEFENSE COUNSEL: You're not supposed to be giving your client answers.

PLAINTIFF'S COUNSEL: No, I'm essentially objecting to you – I'm objecting to you asking the same question over and over just because you don't like the answer.

DEFENSE COUNSEL: Why will you not answer the question?

THE WITNESS: Because it's already been answered there.

DEFENSE COUNSEL: How was it already answered?

THE WITNESS: I don't know, but it's there.

DEFENSE COUNSEL: My question to you is --

THE WITNESS: No, I'm not going to answer the question, same question.[22]

Where, as here, plaintiff's counsel's objections coached the witness and the witness ultimately refuses to answer the question asked, the prohibition on speaking objections is

---

[22] ECF No. 55-1 at 98:11-99:18.

not the only portion of the Deposition Guidelines and Rule 30(c)(2) violated.  In addition, plaintiff's counsel has effectively directed the witness not to answer the question even though he is not asserting privilege, enforcing a court order, or seeking to file a Rule 30(d)(3) motion.

The above examples reflect only a few of plaintiff's counsel's many violations of Rule 30(c) and the Deposition Guidelines.  Plaintiff attempts to excuse these violations and his attorney's inappropriate conduct by arguing they were "substantially justified."[23] Plaintiff asserts his counsel was protecting him from irrelevant and unfairly prejudicial questions.  As an initial matter, the court's review of the deposition transcript refutes this assertion.  At no point does it appear defense counsel was "badgering" the witness.  But in any event, objections based on relevance are improper under the rule and the guidelines, and "[a]n objection that a question is harassing" is only appropriate "as a prerequisite . . . to bringing a motion to terminate or limit the deposition under Rule 30(d)(3)."[24]  The court therefore rejects any assertion that the poor behavior on display here was substantially justified.

The court must now determine the appropriate sanction for these violations.  As Judge Crabtree noted in *In re EpiPen*, "[l]ooking the other way isn't an option."[25]  "Long

---

[23] ECF No. 64 at 9.

[24] *Serrano*, 2012 WL 28071, at *5.

[25] 2018 WL 6617105, at *3.

13

ago, our court established its commitment to enforce the [Deposition] Guidelines, imposing significant sanctions against those who violate them."[26]  Defendant asks the court to impose a myriad of sanctions, ranging from prohibiting use of the deposition testimony to support plaintiff's claims, to requiring plaintiff to present the witnesses for second depositions at plaintiff's cost.[27]  Although the court has found the deposition tactics of plaintiff's counsel reprehensible, they do not rise to a level warranting oppressive sanctions.

The record suggests plaintiff is an unsophisticated person with limited command of the English language.  Nothing in the record suggests he personally was at fault here. Presumably he's unfamiliar with Rule 30 and the Deposition Guidelines, and in any event would've relied on his lawyer to handle the depositions appropriately.  Without endeavoring to establish any bright-line rule, in this particular situation it seems only fair that the sanction contemplated by Rule 30(d)(2) should be imposed against the lawyer, not his client.  Ultimately, the court strives to balance the need to compensate defendant for the "train wreck" caused by plaintiff's counsel at these two depositions, to punish plaintiff's counsel's abusive deposition tactics, and to deter plaintiff's counsel (and other members of the practicing bar), who might otherwise be tempted to engage in such abusive tactics in the future.

---

[26] *Id.* (citing cases); *Ash Grove Cement Co*, 2007 WL 689576, at *6 (fining defense counsel "in the amount of $500 for violation of Fed. R. Civ. P. 30(d) and Section 1 of the Deposition Guidelines").

[27] ECF No. 55 at 10-11.

14

Specifically, the court finds it appropriate to sanction plaintiff's counsel as follows. Plaintiff's counsel shall reimburse defendant for 100% of its costs associated with the depositions of plaintiff and DeRoulet, including the court reporter, the interpreter, and defense counsel's fees for attending (but nor preparing for) the depositions and in briefing the motion for sanctions. Plaintiff shall remit this payment to defendant by **August 26, 2020**, and promptly file a certificate confirming said payment. Should the parties be unable to reach an agreement on the amounts to be paid, defendant shall file a motion for the court to set the amount of sanctions, limited to two double-spaced pages and attaching detailed billing statements, by **September 2, 2020**. Any response by plaintiff, similarly limited to two pages, shall be filed by **September 9, 2020**. No further briefing will be allowed.

At the risk of stating what should now be obvious, the "court is serious about the principles embedded in the Deposition Guidelines, and it expects counsel to adhere to them assiduously in every case."[28] The court reminds both parties that "[w]hile counsel must act to protect the interests of their clients, that obligation is not inconsistent with working together to achieve that object as fairly and efficiently as possible."[29]

## **MOTION TO STRIKE ERRATA SHEET**

Following plaintiff's deposition, the court reporter sent a deposition transcript and errata sheet to plaintiff's counsel. Plaintiff returned his errata sheet with 30 changes to his

---

[28] *In re EpiPen*, 2018 WL 6617105, at *5.

[29] *Serrano*, 2012 WL 28071, at *6.

15

deposition testimony.[30]   As a reason for the changes, plaintiff states "clarification" and "clarification of interpretation."[31]   Defendant moves to strike the errata sheet, arguing the requested changes are material and improper.  The motion is granted as to nine changes.

Fed. R. Civ. P. 30(e) governs witness changes to deposition transcripts.  It provides,

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days . . . in which:  (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.[32]

The Tenth Circuit has recognized that, despite its broad language, Rule 30(e) does not grant a deponent unfettered discretion to change his testimony.[33]   It "does not authorize changes because the deponent lied, misspoke, or otherwise wants to change or clarify his testimony."[34]   Rather, the Tenth Circuit has "adopted a restrictive view of the changes that can be made pursuant to Rule 30(e), and take[s] a dim view of substantive alteration of deposition testimony."[35]   In *Garcia v. Pueblo Country Club,* the Court explained,

> We do not condone counsel's allowing for material changes to deposition testimony and certainly do not approve of the use of such altered testimony

---

[30] ECF No. 56-2.

[31] *Id.*

[32] Fed. R. Civ. P. 30(e)(1).

[33] *BancFirst v. Ford Motor Co*., 422 F. App'x 663, 666 (10th Cir. 2011); *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002) ("We are dismayed with PCC's reliance upon errata from deposition testimony where that errata strayed substantively from the original testimony.").

[34] *Summerhouse v. HCA Health Servs.,* 216 F.R.D. 502, 505 (D. Kan. 2003) (citing *Greenway v. Int'l Paper Co*., 144 F.R.D. 322, 325 (W.D. La. 1992)).

[35] *BancFirst*, 422 F. App'x at 666.

16

that is controverted by the original testimony. . . . The purpose of Rule 30(e) is obvious.  Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order.  The Rule cannot be interpreted to allow one to alter what was said under oath.  If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses.  Depositions differ from interrogatories in that regard.  A deposition is not a take home examination.[36]

When a deponent seeks to make a change that is material, the court examines the following factors, known as the *Burns* rule, to determine whether the change is permissible: "(1) whether the deponent was cross-examined at the deposition; (2) whether the corrections were based on newly discovered evidence; and (3) whether the deponent's deposition testimony reflects obvious confusion, as opposed to indecisiveness or inconsistency, which necessitates a correction to clarify."[37]  In summary, "Rule 30(e) permits non-material changes to deposition testimony, as well as those material changes that satisfy the [*Burns* rule]."[38]

Nineteen of the changes plaintiff makes are based on "clarification of interpretation," or in other words, an alleged correction of the translation of plaintiff's

---

[36] 299 F.3d at 1242 n.5 (quoting *Greenway,* 144 F.R.D. at 325).  *See also Summerhouse*, 216 F.R.D. at 507 ("Although these statements [in *Garcia*] were admittedly dictum when spoken, they have since been elevated and incorporated into the law of this circuit.").

[37] *Cargill Meat Sols. Corp. v. Premium Beef Feeders, LLC*, No. 13-CV-1168-EFM, 2015 WL 5821696, at *1 (D. Kan. Oct. 5, 2015) (citing *Burns v. Bd. of Cty. Comm'rs*, 330 F.3d 1275, 1282 (10th Cir. 2003) and *Summerhouse*, 216 F.R.D. at 507).

[38] *Summerhouse*, 216 F.R.D. at 508.

17

answers by the interpreter.[39]  Neither party cites, and the court has not found, a case in the Tenth Circuit addressing Rule 30(e) changes to correct inaccurate translations.  Other courts have recognized, however, that translation errors may, and should, be addressed on errata sheets.[40]  This is particularly true when the deponent's attorney objected to the interpretation during the deposition.[41]  "Blatant rewrites" that "fundamentally change the substance" of an answer, however, should not be permitted.[42]

Applying these standards to plaintiff's errata sheet, the court finds as follows:

- The court **permits** the following changes, which are consistent with contemporaneous objections made by plaintiff's attorney (who speaks and understands Spanish) to translations of plaintiff's answers during the deposition: **pp. 18:1, 27:16, 35:14-15, 41:22, 81:16, 83:24-25, 92:11-12, and 103:3**.  Because plaintiff's attorney contemporaneously asserted the corrections to the translation,

---

[39] ECF No. 56-2.  It is undisputed that plaintiff's native language is Spanish, though he has a limited ability to speak, read, and write English.  Without objection by defendant, plaintiff used an interpreter during his deposition.

[40] *See, e.g., Sudre v. The Port of Seattle,* No. C15-0928JLR, 2016 WL 7035062, at *5 (W.D. Wash. Dec. 2, 2016) (denying motion to strike deposition corrections where interpreter was used); *Liang v. AWG Remktg., Inc.,* No. 2:14-CV-00099, 2015 WL 12999754, at *1 (S.D. Ohio July 24, 2015) (suggesting plaintiff should have corrected errors to his deposition testimony caused by incorrect translation on an errata sheet); *Nick v. Bethel*, No. 3:07-CV-0098 TMB, 2008 WL 11429309, at *9 (D. Alaska July 23, 2008) (denying motion to strike Rule 30(e) correction sheet).

[41] *See Sudre*, 2016 WL 7035062, at *5.

[42] *Nick*, 2008 WL 11429309, at *9.

18

the defense attorney had an opportunity to ask follow-up questions.[43]   Moreover, none of these corrections reflect substantive, material changes to plaintiff's testimony.[44]

- The court **permits** the following changes that do not substantively change plaintiff's testimony: **pp. 20:18, 21:9, 28:6-7, 39:24, 56:10, 57:11, 58:11, 62:1, and 62:7**.   For example, plaintiff changes the word "leader" transcribed at p. 20:18 to "lead" when describing his job title.   At that point in the deposition, the issue was whether plaintiff's job title was "traffic control superintendent."[45]   Thus, it is not material whether plaintiff believed his title was "leader" or "lead."   Indeed, later in the deposition, the defense attorney also used the word "lead" in discussing plaintiff's role.[46]

- The court **strikes** the following changes which were not addressed during the deposition via objection and which fundamentally change the substance of plaintiff's deposition testimony: **pp. 82:15 and 82:17**.   For example, when plaintiff was asked whether members of his crew would come to him with a grievance, his

---

[43] An instance of when the defense attorney exercised this opportunity came when plaintiff's attorney objected that the word "authorized" should have been translated as "responsible," and the defense attorney asked plaintiff to describe his understanding of how the two words are different.  ECF No. 56-1 at 81-82.

[44] The court rejects defendant's conclusory statements that some of these changes were "material."

[45] ECF No. 56-1 at 20:19-21.

[46] *See* ECF No. 56-1 at 80:24, 81:9, and 85:15.

19

answer was transcribed at p. 82:15 as "not all the time," which suggests crew members would come to him *some* of the time.  Plaintiff therefore is not permitted to controvert this testimony by changing his answer to "not *any* of the time."[47]

The remaining ten changes identified on plaintiff's errata sheet are purportedly made to "clarify" plaintiff's testimony.[48]   Defendant argues these changes go beyond clarifications and amount to plaintiff "rewriting" portions of his deposition.[49]   The court largely agrees and finds as follows:

- The court **strikes** the following changes that materially alter plaintiff's answers[50] and that do not meet the *Burns* rule because plaintiff was not cross-examined at the deposition on these points, the corrections are not alleged to be based on newly discovered evidence, and the transcript does not reflect "obvious confusion" on plaintiff's part:[51] **pp. 20:21, 24:10, 29:12, 35:22, 36:22, 37:5, and 38:2.**   For example, the court will not permit plaintiff to change his answers to the exact

---

[47] ECF No. 56-1 at 82:15 (emphasis added).

[48] ECF No. 56-2.  Although originally 11 changes fell under this category, plaintiff has withdrawn his change to 39:12.  *See* ECF No. 65 at 6.

[49] ECF No. 56 at 8.

[50] *See BancFirst*, 422 F. App'x at 666 ("Although perhaps not directly contradicting Medcalf's deposition testimony, the errata sheet and declaration submitted by Medcalf substantially qualify his prior statements, and thus make precisely the sort of substantive changes of which we disapprove."); *Garcia*, 299 F.3d at 1242 n.5 (10th Cir. 2002) ("We are dismayed with PCC's reliance upon errata from deposition testimony where that errata strayed substantively from the original testimony.").

[51] *Burns,* 330 F.3d at 1282.

O:\ORDERS\19-1111-JWB-55, 56.docx

opposite of his testimony; e.g., "I don't remember" may not be changed to "I do remember."[52]  In this regard, the court identifies one instance that presents a close call.  At p. 35:22, plaintiff changes "I didn't say" to "I did say," and the rest of his answer reflects that "I did say" is most likely how plaintiff intended to answer. However, as noted above, Rule 30(e) should not be used to alter answers simply because a deponent misspoke.[53]  Therefore, the court strikes this change and leaves it to the parties to argue the correct interpretation of this testimony if and when it is submitted as evidence in the case.

- The court **permits** the following changes that do not substantively alter plaintiff's answers**: pp. 37:1, 38:8, and 122:10**.  For example, in response to a compound question, plaintiff is permitted to add to his answer to indicate which portion of the question he was answering.[54]

In the concluding paragraph of its motion to strike, defendant requests the imposition of sanctions under Fed. R. Civ. P. 11(c).  Defendant has not met the procedural requirements that attend a Rule 11 motion for sanctions, most notably by filing the motion "separately from any other motion" and serving a copy of the motion on the opposing party

---

[52] *See* ECF No. 56-1 at 36:22 & 37:5.

[53] *See Summerhouse,* 216 F.R.D. at 505.

[54] *See* ECF No. 56-1 at 122:10 (In response to the question, "Is it correct that you did not have any of this authorization that we've talked about, is it correct that the questions that I have been asking of you, is it correct that you did not have authorization?," plaintiff may amend his "No" answer to "No, I did not have the authorization.").

O:\ORDERS\19-1111-JWB-55, 56.docx

21 days prior to filing.  Regardless, the conduct of plaintiff's counsel with respect to the errata sheet (which was not a paper presented to the court under Rule 11(b)) does not come close to violating Rule 11.

IT IS THEREFORE ORDERED that defendant's motion for sanctions is granted, and defendant's motion to strike is granted in part and denied in part, all as set forth above.

Dated August 5, 2020, at Kansas City, Kansas.

 s/ James P. O'Hara

James P. O'Hara
U.S. Magistrate Judge

22