IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JOSE DIAZ CERDA,

      Plaintiff,

v.                                         Case No. 19-1111-JWB

CILLESSEN & SONS, INC.,

      Defendant.


**MEMORANDUM AND ORDER**

This case comes before the court on Defendant Cillessen & Sons, Inc.'s motion for summary judgment (Doc. 70) and Plaintiff Jose Diaz Cerda's motion to strike (Doc. 80). The motions are fully briefed and ripe for decision. (Docs. 71, 79, 86, 87, 90.) Defendant's motion (Doc. 70) is DENIED IN PART and GRANTED IN PART and Plaintiff's motion (Doc. 80) is DENIED for the reasons stated herein.

**I.      Facts and Procedural History**

In keeping with the standards governing summary judgment, the following statement of facts views the evidence, and all reasonable inferences therefrom, in the light most favorable to Plaintiff as the non-moving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) (evidence is viewed in the light most favorable to the non-moving party on summary judgment because credibility determinations, weighing conflicting evidence, and drawing appropriate inferences are jury rather than judge functions).

Plaintiff was initially employed by Defendant in January 2014. Defendant is a traffic control company that works as a sub-contractor to heavy construction companies. Diaz's duties

while he was employed by Defendant are in dispute.  Defendant contends that Plaintiff was a traffic control superintendent while Plaintiff asserts that he was a supervisor.  In support of its position, Defendant offers declarations from John Cillessen, an owner of Defendant, that states Plaintiff was a traffic control superintendent.  (Doc. 71-3 at 4.)  Defendant's records indicate that Plaintiff was a "supervisor" on January 8, 2016.  (Docs. 79 at 8; 79-19.)  On December 6, 2019, Paula Cillessen, Defendant's president and part owner, stated that Plaintiff was a "traffic control supervisor, and led a crew of three to four individuals."  (Doc. 79-22.)  There is no indication in the record as to whether a supervisor and superintendent are the same.

Plaintiff testified that he worked on a crew of three to four individuals.  (Doc. 79-1 at 57.) While on that crew, he was the "one in charge."  (*Id*. at 62.)  Plaintiff testified that he would not make decisions, however, but would call the office if the contractor needed to change something or if something wasn't being done properly.  (*Id.*)  This is contrary to Defendant's position that is that Plaintiff was the person who communicated with the contractors on the site regarding changes. (Doc. 71-3 at 6.)  Plaintiff further testified that he did not make decisions regarding termination and hiring and that he did not recall being asked about people being disciplined.  (Doc. 79-1 at 66-68.)  Plaintiff has attested that his primary duties include physical labor involving the placing and removal of signs; loading and unloading signs and tools on a trailer; attaching signs to the ground and placing cones; driving a truck; marking, taping, and painting lanes per the instructions of a supervisor.  (Doc. 79, Exh. C.)  Defendant contends that Plaintiff had a significant amount of duties, including completing daily field reports.  These reports described the work completed, crew members and hours, and materials used.  (Doc. 71-3 at 5.)  Plaintiff testified that he did not fill out the daily field reports.  (Doc. 79-1 at 74.)

When Plaintiff first started working for Defendant, he was paid an hourly wage and overtime. At some point in time, he was transitioned to a weekly salary. In 2017, he was receiving $1,200 per week, which was increased to $1,250 per week on December 30, 2017. (Doc. 71 at 2.) During 2017 and 2018, Plaintiff worked in excess of 40 hours during a week. Typically, Plaintiff worked at least ten hours of overtime a week. Plaintiff was not paid overtime wages for those hours. (Docs. 79 at 11; 86 at 4.) While working for Defendant, Plaintiff believed that Defendant employed a total of 30 or 35 employees. During the years 2017 and 2018, Defendant did not employ 50 or more employees for at least 20 work weeks. (Doc. 71 at 13-14; 71-2 at ¶ 38; 79-21 at 5-8.)

During the week prior to July 13, 2018, it was believed that Plaintiff suffered a heat stroke. On July 13, after a morning meeting, John Cillessen and other managers determined that Plaintiff was in need of immediate medical attention due to his appearance, condition, and inability to remember the prior day's work or the current day's work. Plaintiff was transported to Via Christi Immediate Care. Upon examination, John and Robert Cillessen stated that Plaintiff was experiencing confusion, memory problems, problems walking and communicating. Plaintiff was then transported to the Wesley Medical Center emergency room. Plaintiff was later discharged from the hospital. (Docs. 71 at 3-4; 79 at 2.) The discharge records state that Plaintiff's principal diagnosis was "subthalamic stroke vs demyelinating process." (Doc. 79-8.) Plaintiff was to follow up with neurology upon discharge. (*Id.* at 3.) After Plaintiff's medical incident, Plaintiff did not return to work for Defendant.

The parties have significant disagreement regarding Plaintiff's condition, whether he could return to work, and if he was terminated or voluntarily resigned. Those facts, however, are not material to this court's decision. Therefore, the court finds that Plaintiff's motion to strike portions

3

of several affidavits (Doc. 80) is denied as moot as the paragraphs Plaintiff seeks to strike are not material to this court's decision.

On August 11, 2019, Plaintiff filed an amended complaint against Defendant alleging claims under the Americans with Disabilities Act ("ADA"), the FMLA, and the Fair Labor Standards Act ("FLSA").  (Doc. 9.)  Upon Defendant's motion, the court dismissed Plaintiff's claims under the ADA and his FMLA retaliation claim.  (Doc. 34.)  Defendant now moves for summary judgment on Plaintiff's remaining claim under the FMLA and his claim for unpaid overtime under the FLSA.

**II.     Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 761 (10th Cir. 2017). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Id.*  Any statement of fact that has not been controverted by affidavit or an exhibit is deemed to be admitted. D. Kan. Rule 7.4.  Also, the court will only consider facts based on personal knowledge or supported by exhibits.  Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The court views all evidence and reasonable inferences in the light most

4

favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III.    Analysis

#### A.  FMLA Interference Claim

Plaintiff asserts that Defendant interfered with his FMLA leave by refusing Plaintiff's request to return to work.  Defendant moves for summary judgment on Plaintiff's claim of FMLA interference asserting that Plaintiff is not entitled to FMLA leave and that he voluntarily terminated his employment.

The FMLA grants "an eligible employee ... a total of 12 workweeks of leave during any 12–month period" if the employee is unable to perform the functions of his position due to a serious health condition. 29 U.S.C. § 2612(a)(1)(D).  An individual also has the right to be restored to his position, or an equivalent position, after taking leave.  *Id.* § 2614(a)(1). The FMLA makes it unlawful for any covered employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter."  *Id.* § 2615(a)(1).  To establish an FMLA interference claim, Plaintiff must show "(1) that [he] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [his] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [his] FMLA rights." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (quoting *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005)).  Defendant argues that Plaintiff has not established that he was entitled to FMLA leave, that he voluntarily resigned, and that he was not capable of returning to work.

Turning to the first requirement, Plaintiff must show that he was entitled to FMLA leave as an eligible employee. *Arvidson v. Wallace, Saunders, Austin, Brown & Enochs, Chartered*, No.

05-4025-JAR, 2006 WL 379843, at *2 (D. Kan. Feb. 16, 2006) ("Plaintiff bears the burden of proving that [he] is an 'eligible employee.'")(citation omitted).   An "eligible employee" is an employee that meets the following standards: (1) has been employed for at least 12 months with the employer from whom he is requesting leave; (2) worked at least 1,250 hours in the prior 12–month period for such employer; and (3) the employer has at least 50 employees within 75 miles of the employee's worksite.  *See id*.; 29 U.S.C.  § 2611(2).   There is no dispute that the first two elements have been met.  Rather, Defendant argues that Plaintiff has failed to establish that it has at least 50 employees.   Under the FMLA, a private employer is a covered employer if "it maintained 50 or more employees on the payroll during 20 or more calendar workweeks (not necessarily consecutive workweeks) in either the current or the preceding calendar year."   29 C.F.R. § 825.105(e).   Employees on unpaid leave are counted if the employer expects that the employee will return to work.  *Id.* § 825.105(c).   "Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period."   *See* 29 C.F.R. § 825.300(b)(1).   In this case, the eligibility determination would be on July 13, 2018, as that is the date that Plaintiff went to the hospital for his condition.

According to the evidence submitted by Defendant, Paula Cillessen declared that Defendant did not have 50 or more employees for 20 or more work weeks during the year 2017 or 2018.  (Doc. 71-2 at 7.)   Defendant's response to an interrogatory regarding the number of employees employed in each week of those two years, through Plaintiff's termination, supports Cillessen's affidavit.  (Doc. 79-21 at 5-8.)   Those numbers included employees who were being paid for those weeks and those who were on the payroll but not paid for those weeks.   (*Id.*)   According to Defendant's records, during the year 2017 and the first nine months of 2018 there

were only five weeks in which Defendant employed 50 or more employees.[1]  (*Id.*)  Those weeks occurred from the payroll date beginning June 1, 2018, through the June 28, 2018, pay date.  (*Id.*)  Moreover, Plaintiff testified that he believed that Defendant only employed 30 to 35 individuals.  (Doc. 79-1 at 139.)  In response to Defendant's proposed facts regarding the number of employees, Plaintiff states that they are controverted and cites to three exhibits.  (Doc. 79 at 8.)  Plaintiff also has proposed facts that Defendant employs more than 50 individuals and cites to the same exhibits.  (Doc. 79 at 11.)  Defendant asserts that the exhibits are inadmissible evidence.

First, Plaintiff has attached what appears to be a picture of a computer screen displaying Defendant's quarterly tax return for 2018.  (Doc. 79-17.)  While it appears to be a picture of Defendant's quarterly return, Plaintiff has not authenticated the exhibit and there is no indication that this picture was produced by Defendant in discovery.  Moreover, even if the exhibit is what it purports to be, it does not establish that Defendant had more than 50 employees for 20 or more work weeks.  The report concerns only twelve weeks of 2018 -- the months of April, May, and June.[2]  It also asks for the number of employees who were paid during the entire twelve-week period, which could mean that some of those 51 individuals were not employed during the entire twelve-week period.  Therefore, this exhibit does not controvert Defendant's statement of fact that it did not employ more than 50 individuals for 20 or more weeks.

Plaintiff has also attached two additional unauthenticated exhibits that appear to be job postings.  One exhibit is allegedly Defendant's profile on the website linkedin.com.  (Doc. 79-16.)

---

[1] Plaintiff argues that this interrogatory response does not support a finding that Defendant had less than 50 employees at the worksite because it used the term "facility" in its response.  (Doc. 79 at 16.)  The court is not persuaded.  Defendant was answering an interrogatory that asked how many employees were on its payroll.  Defendant then identified employees who were in the facility and employees who were out on leave.  There is no evidence that there is another group of employees that Defendant left out of its calculation and the interrogatory response clearly stated that Defendant was identifying its "employee count."  Moreover, there is no evidence that Defendant has more than one location.

[2] This report is consistent with Defendant's interrogatory answer that shows more than 50 employees for 5 weeks in June 2018.

Defendant objects to this exhibit as unauthenticated. The record does not indicate where this exhibit was obtained. "Printouts from non-government websites are not self-authenticating." *Toytrackerz LLC v. Koehler*, No. CIV.A. 08-2297-GLR, 2009 WL 2591329, at *6 (D. Kan. Aug. 21, 2009) (citations omitted). Because the website is not self-authenticating, Plaintiff must present "evidence from a witness with personal knowledge of the website at issue stating that the printout accurately reflects the content of the website and the image of the page on the computer at which the printout was made." *Id.* In support of the exhibit, Plaintiff cites to deposition testimony from Nanda Deroulet, Plaintiff's ex-wife. (Doc. 79 at 8.) Reviewing the deposition testimony, however, Ms. Deroulet is merely asked to recite what is on the exhibit. (Doc. 79-2 at 52-54.) There are no questions that would indicate that Ms. Deroulet has personal knowledge regarding the information on the website and the date that the printout was obtained. Therefore, Plaintiff has not properly laid a foundation for the admissibility of the exhibit. *Toytrackerz*, 2009 WL 2591329, at *6; *see* Doc. 79-2 at 53-54, 57. As Plaintiff has failed to establish the exhibit's authenticity, the court will not consider the exhibit. Moreover, the exhibit does not support Plaintiff's burden to show that Defendant had more than 50 employees for 20 or more weeks in 2017 or 2018, prior to his medical leave. Plaintiff relies on the exhibit because it states that the company's size is "51 to 200." (Doc. 79-16.) But the website fails to provide who supplied the information and, importantly, the time stamps on the exhibit are August 28, 2019, and December 8, 2019.

Plaintiff also has attached what appears to be a screenshot for a job posting on ziprecruiter.com. (Doc. 79-18.) Defendant again objects to the exhibit as inadmissible. Plaintiff has not authenticated this exhibit. *See Toytrackerz LLC*, 2009 WL 2591329, at *6. Therefore, it is inadmissible. Moreover, it does not controvert Defendant's facts regarding the number of employees. The website states that Defendant is "an office of 10 with roughly 40 field employees."

(Doc. 79-18 at 3.)  However, the date displayed on the exhibit is August 27, 2019.  Therefore, the exhibit would only support the assertion that Defendant employed approximately 50 individuals as of August 27, 2019.  It does not make any statements regarding the number of employees employed in 2017 and through July 2018.

Perhaps realizing that he has not produced sufficient evidence supporting a finding that Plaintiff is an eligible employee under the FLSA during the time periods at issue, Plaintiff argues that it is Defendant's burden to establish the number of employees it employed during 2017 and 2018.  (Doc. 79 at 15-16.)  Plaintiff, however, has the burden to show that he is an eligible employee, which includes the requirement that Defendant has 50 employees.  *See  Hackworth v. Progressive Cas. Ins. Co*., 468 F.3d 722, 726, n. 4 (10th Cir. 2006); *Cheek v. City of Edwardsville, KS*, 514 F. Supp.2d 1236, 1248 (D. Kan. 2007); *Arvidson*, 2006 WL 379843, at *2.   *Cheek* recognized that there is an exception to the rule that the burden is on the employee.  That exception occurs when an employer seeks to use an exception to exclude an employee under the applicable statute.  In *Cheek*, there was evidence that the number of individuals being paid by the city defendant was more than 50.  *Cheek*, 514 F. Supp.2d at 1247-48.  The city defendant, however, argued that a number of those individuals were not employees as they were exempted under the FLSA's "personal staff and policymaking exceptions."  *Id.* at 1248. The court held that it would be the city defendant's burden to show that these individuals were not employees under the statute because the employer has the burden to establish an exemption or exception under the FLSA.  *Id. Cheek* is distinguishable because Defendant is not arguing that any of the individuals it employed in 2017 and 2018 were not employees under the FLSA.

Moreover, even if Defendant had the burden at this stage, Defendant has put forth evidence that it did not employ 50 employees for more than 20 weeks in 2017 or through September 2018.

(Docs. 71-2 at 7; 79-21 at 5-8.)  Plaintiff now has the burden to show that there is a dispute as to the number of employees.  He has not.  The only admissible evidence before the court is that Defendant employed 50 or more employees for a total of five weeks in June 2018.  This is not sufficient to establish that Plaintiff is an eligible employee under the FLSA as of July 13, 2018.[3]

To prevail on his claim that Defendant wrongfully interfered with his right to take FMLA leave, Plaintiff must show that he was entitled to FMLA leave.  *Jones*, 427 F.3d at 1319; *Arvidson*, 2006 WL 379843 at *2.[4]  Because Plaintiff has failed to show a genuine dispute of material fact about an essential element of his claim, summary judgment is appropriate.  *Celotex*, 477 U.S. at 323.

### B.  FLSA Claim

Defendant moves for summary judgment on Plaintiff's claim under the FLSA on the basis that Plaintiff is exempt from overtime as an executive employee.  The FLSA generally requires employers to pay overtime, i.e. one and one-half the employee's normal wage rate, for each hour the employee works over forty in a work week. 29 U.S.C. § 207(a)(1). The FLSA also sets forth certain exemptions to this requirement, including the executive exemption.  "Exemptions to the FLSA are to be narrowly construed; the employer must show the employees fit 'plainly and unmistakenly within [the exemption's] terms.'"  *Hamby v. Associated Centers for Therapy*, 230 F. App'x 772, 783 (10th Cir. 2007) (quoting *Reich v. Wyoming*, 993 F.2d 739, 741 (10th Cir. 1993)).  It is Defendant's burden to show that Plaintiff was an executive employee.  *Green v. Harbor Freight Tools USA, Inc*., 888 F. Supp.2d 1088, 1094–95 (D. Kan. 2012).  Plaintiff qualifies if he:

---

[3] To the extent Plaintiff may assert that the date Plaintiff requested to return in September 2018 is the operative date, the evidence also shows that Defendant had not employed 50 or more employees for 20 weeks as of September 2018.
[4] Plaintiff also makes the statement that an employer who represents that employees are eligible for FMLA may be estopped from denying coverage.  (Doc. 79 at 17.)  There is no evidence, however, that Defendant represented that Plaintiff was eligible for FMLA leave.

"(1) is paid a salary not less than \$455 per week; (2) has a primary duty of management; (3) regularly directs two or more employees; and (4) has authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight." *Id.* at 1095 (citing 29 C.F.R. § 541.100(a)(1)-(4) (2005)).[5]  In this case, the second and fourth criteria are in dispute.

Based on the record, the court finds that there is a genuine dispute of material fact as to the second and fourth criteria.  In his deposition and declaration, Plaintiff disputes having a managerial role as to many duties that Defendant contends are a part of Plaintiff's position.  The court will not reiterate those here.  Moreover, Plaintiff has testified that he has no authority to hire, fire, or discipline and that his recommendation regarding the same is not sought by his supervisors.  (Docs. 79-1 at 66-67; 79-3.)

Defendant's motion for judgment on Plaintiff's FLSA claim is therefore denied.

### C. Good Faith

Defendant also seeks summary judgment on Plaintiff's claim for liquidated damages on the basis that it acted in good faith in classifying Plaintiff as exempt.  "Ordinarily, an employer who violates the FLSA is liable for both unpaid wages and an additional equal amount as liquidated damages." *Garcia v. Tyson Foods, Inc*., 766 F. Supp.2d 1167, 1183 (D. Kan. 2011) (citing 29 U.S.C. § 216(b)). This additional compensation is "not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." *Jordan v. U.S. Postal Serv*., 379 F.3d 1196, 1202 (10th Cir. 2004) (citation omitted).

---

[5] As of January 1, 2020, the weekly salary requirement is \$684.  29 C.F.R. § 541.100.

The court may decline to award liquidated damages if Defendant shows that it had "reasonable grounds" for believing Plaintiff was an exempt employee and acted in "good faith." 29 U.S.C. § 260. "The good faith requirement mandates the employer have an honest intention to ascertain and follow the dictates" of the FLSA. *Renfro v. City of Emporia*, 948 F.2d 1529, 1540 (10th Cir. 1991) (citation and internal quotation omitted).

At this stage of the proceedings, the court declines to make a finding regarding liquidated damages. The parties hotly contest Plaintiff's duties and Defendant has not offered any evidence regarding the steps it took in classifying Plaintiff as an exempt employee. Defendant must meet its substantial burden to show that it had reasonable grounds and acted in good faith; otherwise, the court must award liquidated damages. *Id*.

Defendant's motion for summary judgment on Plaintiff's liquidated damages claim is denied.

IV.    **Conclusion**

Defendant's motion for summary judgment (Doc. 70) is GRANTED IN PART AND DENIED IN PART. Defendant's motion for judgment on Plaintiff's FMLA interference claim is GRANTED. Defendant's motion for summary judgment on Plaintiff's FLSA claim is DENIED. Plaintiff's motion to strike (Doc. 80) is DENIED AS MOOT.

IT IS SO ORDERED this 10th day of November, 2020.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE